UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 22-cr-240 (JNE/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Jaime Resendiz, | |
| Defendant. | |

## INTRODUCTION

Defendant Jaime Resendiz moved to suppress evidence obtained from law enforcement's tracking his location pursuant to a warrant. Mot. to Suppress Evidence Obtained by Search and Seizure; Dkt. No. 19; Mem. in Support of Discovery Motions [Def. Mem.]; Dkt. No. 33. Resendiz argues the warrant application lacked probable cause and that the issuing judge abandoned his judicial role in issuing it. Def. Mem. at 3; Dkt. No. 33. Further, Resendiz argues that evidence obtained from later searches of his backpack and cellphone are fruits of the unlawful location tracking and should be suppressed as well. *Id.* at 17-18. Because the tracking warrant was supported by ample probable cause, the Court recommends the motion [Dkt. No. 19] be denied.

## FINDINGS OF FACT

On August 11, 2022, Agent Justin Bowman of the Dakota County Drug Task Force applied for a tracking warrant relating to Resendiz's Facebook account, specifically seeking the time, date, addressing, and GPS location information from messages sent to and from that Facebook account. Gov. Ex. 1 at 2. The warrant's supporting application and affidavit explained that Bowman and Alcohol, Tobacco, Firearms, and Explosives

(ATF) Agent Nicholas McAdams suspected an individual of transporting fentanyl from Arizona to Minnesota based in part on information obtained from a confidential informant. *Id.* at 4. According to that informant, Resendiz would be traveling to Arizona to "conduct a narcotics transaction" then return to Minnesota "with narcotics." *Id.* After learning this information, Bowman searched Resendiz's criminal record and learned of two pending drug possession charges. Through further investigation, including conversations with law enforcement officers, Bowman learned the first pending charge involved possession of 62 M30 pills containing fentanyl and $14,000 in cash. The second involved 500 M30 pills, an ounce of methamphetamine, and 335 grams of marijuana. Resendiz had also been arrested after an alleged shooting stemming from a drug transaction. *Id.* Through his investigation into Resendiz's background, Bowman learned of an active Facebook account that appeared to belong to Resendiz. *Id.* Based on these details in the warrant applications, Judge Richard Kyle, Jr. issued the warrant. *Id.* at 13.

On August 18, 2022, police applied for a warrant to search Resendiz's backpack and person. Def. Ex. 2 at 3. According to the warrant application, police had located Resendiz at the St. Paul Union Depot Transit Station[1] where they observed him fleeing with a yellow/tan backpack. A bystander informed law enforcement that Resendiz had fentanyl with him in his backpack. Law enforcement detained Resendiz and his bag. *Id.* A drug-sniffing canine alerted to drugs in the backpack. *Id.* Judge Kelly Olmstead issued a warrant. *Id.* at 8. The search uncovered a cell phone, a package containing M30 pills,

---

[1] The record is somewhat unclear but appears to suggest law enforcement located him in St. Paul through use of information obtained pursuant to the tracking warrant at issue in this motion. *See* Def. Mem. at 17-18, Dkt. No. 33; Gov. Mem. at 11-12; Dkt. No. 34. Gov. Ex. 2 at 3.

and drug paraphernalia. *Id.* at 9. ATF Agent McAdams then applied for a warrant to search the cell phone, citing these earlier events. Def. Ex. 3. Magistrate Judge Becky Thorson issued the warrant. *Id.* at 1.

Resendiz now argues the tracking warrant lacked probable cause. Def. Mem.; Dkt. No. 33. He claims the warrant application was required to establish the informant's veracity, reliability, and basis of knowledge but failed to do so. *Id.* at 3. He also contends none of the informant's information was corroborated and therefore issuance of a warrant based on that information was error. *Id.* at 3-6. In particular, he argues that the information about Resendiz's pending charges was stale and thus did not support the informant's tips or a probable cause finding. *Id.* at 14. Because the tracking was unlawful, Resendiz argues, the later searches of his backpack, person, and cell phone were also unlawful as fruit of the poisonous tree. *Id.* at 17-18.

## CONCLUSIONS OF LAW

The tracking warrant was supported by probable cause and its issuance was not unlawful. The Fourth Amendment prohibits "unreasonable searches and seizures," and provides that law enforcement may only obtain a warrant "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. "Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances." *United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016). To be valid, a warrant must set forth "sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* The totality-of-the-circumstances test for reviewing a probable cause

determination means that such inquiries are "not readily, or even usefully, reduced to a neat set of legal rules." *Florida v. Harris*, 568 U.S. 237, 243 (2013). While judges issuing search warrants may "draw reasonable inferences from the totality of the circumstances" *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (quoting *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009)), a warrant issued based only on a supporting affidavit that merely asserts conclusions rather than facts may be invalid. *Aguilar v. Texas*, 378 U.S. 108, 113 (1964) (internal citations omitted).

Reviewing courts must afford "great deference" to the probable cause determination of the judge who issued the warrant and should resolve even "doubtful or marginal cases" in favor of a warrant's validity. *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010) (citation omitted); *see United States v. Ventresca*, 380 U.S. 102, 109 (1965). So long as the issuing judge had a "substantial basis" for concluding the "search would uncover evidence of wrongdoing," this Court must uphold the probable cause determination. *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999).

I.  **Informant's Tips**

Resendiz argues information in the warrant application was insufficient to support probable cause in part because the application did not address the confidential informant's veracity, reliability, and basis of knowledge. *Id.* at 3-4. Resendiz appears to rely on *Aguilar v. Texas*'s abrogated test about informant tips, arguing the application was insufficient because it "did not provide any basis as to how the [informant] acquired the information" nor was the informant's information "corroborated in any respect." *Id.* (relying on *Aguilar v. Tex.*, 378 U.S. 108, 114 (1964) (holding that a warrant affidavit must provide "some of the underlying circumstances on which the informant based his

4

conclusion . . . and some of the underlying circumstances from which the officer concluded that the informant . . . was credible, or his information reliable")). But *Aguilar*'s rigid test no longer governs review of informant information contained in a warrant application. Instead, courts understand an informant's veracity, reliability, and basis of knowledge to be "closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is probable cause to believe that contraband or evidence is located in a particular place." *Illinois v. Gates*, 462 U.S. 213, 230 (1983). Thus, courts review informant information with the all-things-considered approach used in assessing the existence of probable cause. *Id.*; *see also United States v. Buchanan*, 574 F.3d 554, 562-63 (8th Cir. 2009) (rejecting the "excessively technical dissection of informants' tips and the judging of bits and pieces of information in isolation against artificial standards").

Resendiz asks the Court to narrowly assess the informant's information in a vacuum, ignoring the overall meaning of the warrant application. While the warrant application does not indicate exactly how the informant knew his/her information, Resendiz's contention that the application contained no corroborating evidence is incorrect. The warrant application explains that Bowman learned information from the informant, then did his own investigation into Resendiz in response the informant's tip. Gov. Ex. 1 at 4. In the course of that investigation, Bowman discovered that Resendiz had prior charges for drug possession. Digging deeper, Bowman learned those charges were for conduct similar to that suggested by the informant, i.e. possession of large amounts of M30 pills—more than 500 in one instance—and other drugs including

5

methamphetamine. *Id.* Furthermore, he learned that Resendiz had been arrested for a shooting related to a drug deal. *Id.*

Those pending charges and arrest all had to do with drug dealing, including M30 pills, and therefore tended to corroborate the informant's tip about Resendiz's suspected trafficking activity. Corroboration need only "reduce[] the chances of reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay [of the informant]." *Gates*, 462 U.S. at 245. Moreover, the Eighth Circuit has explained that a defendant's history of similar criminal conduct may support a probable cause determination. *See United States v. Thurmond*, 782 F.3d 1042, 1045 (8th Cir. 2015) (holding that probable cause to suspect drug dealing existed in part because police knew of the defendant's "earlier arrest for possession of a controlled substance and his juvenile history with controlled substances"); *see also United States v. Ralston*, No. 21-cr-76, 2022 WL 1303089 at *10 (N.D. Iowa, May 2, 2022) ("A suspect's relevant criminal history can inform the existence of probable cause."). All things considered, Resendiz's past criminal conduct helped to corroborate the informant's tip and supported the issuing judge's probable cause determination.

Finally, that the warrant application did not specifically state Bowman corroborated the informant's information or use the words "corroborate" or "reliable" is immaterial to the Court's assessment of probable cause. Reading the warrant application as a whole, instead of "judging [] bits and pieces of information in isolation," the use of the informant's tip did not taint the warrant application. *Buchanan*, 574 F.3d at 562-63.

6

## II. Staleness

Resendiz also contends the information about pending charges from 2021 is insufficient to support probable cause for the warrant because that information was stale. Def. Mem. at 14; Dkt. No. 33. There is "no fixed formula" for determining when information becomes stale. *United States v. Petruk*, 929 F.3d 952, 960 (8th Cir. 2019) (quoting *United States v. Nieman*, 520 F.3d 834, 839 (8th Cir. 2008); *see also United States v. Koeling*, 992 F.2d 817, 822 (8th Cir. 1993) ("There is no bright-line test for determining when information is stale."). Instead, courts assess the property subject to search and the nature of the alleged criminal act. *Id.*

Where a crime is "of a continuous nature" the passage of time between obtaining the information and executing the search is "less significant." *Id.* (quoting *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995); *see also United States v. Lemon*, 590 F.3d 612, 615 (8th Cir. 2010) (determining an eighteen-month lapse was not stale); *United States v. Prideaux-Wentz*, 543 F.3d 954 (7th Cir. 2008) (refusing to find two to four year old evidence stale as a matter of law). In narcotics investigations, "weeks or months" between a reported act and the search does not necessarily make that information stale. *United States v. Davis*, 867 F.3d 1021, 1028 (8th Cir. 2017). In *Davis*, officers had reason to believe the defendant had been selling narcotics for over a year. They had information about numerous suspected drug transactions occurring within five weeks of the search. While there was a ten-day period between the last witnessed suspected drug transaction and execution of a search, that alone did not diminish probable cause because of the ongoing nature of the defendant's drug activity. *Id.*

7

The pending charges from 2021 are not stale as a matter of law. An informant told law enforcement they believed Resendiz was trafficking M30 pills in August 2022. Bowman then learned that Resendiz had pending charges for similar conduct from 2021. Gov. Ex. 1 at 4; Def. Mem. at 14; Dkt. No. 33. Those charges were not stale. *See Davis*, 867 F.3d at 1028 (information was not stale where "the officers had reason to believe that Davis had continually sold methamphetamine for over a year"). The charges were fairly recent, and were still pending; while presumed innocent, Resendiz had not been acquitted of those allegations. Furthermore, a relatively small gap between those charges and this warrant application is largely insignificant given the ongoing nature of Resendiz' alleged activities. *United States v. Petruk*, 929 F.3d 952, 960 (8th Cir. 2019)*; United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995). And as explained above, past criminal conduct may inform a probable cause determination. *Thurmond*, 782 F.3d 1042 (criminal record, including juvenile offenses, relevant to probable cause determination); *Ralston*, 2022 WL 1303089; *cf. United States v. Biondich*, 652 F.3d 743, 746 (8th Cir. 1981) (finding prior conviction relevant to demonstrate defendant's intent to distribute drugs). Given the recency of the still-pending charges and their similarity to the conduct alleged in the warrant application, crediting them in a probable cause finding was not error.

### III.   The Application's Overall Meaning

Resendiz attempts to discredit the application by parsing its language. While the Court acknowledges that the warrant application is somewhat inartfully written, "[t]he determination of whether or not probable cause exists to issue a search warrant is to be based upon a common-sense reading of the *entire affidavit*." *Davis*, 867 F.3d at 1027 (emphasis added, internal citations omitted). Resendiz argues that the Court should

discount the warrant affidavit because it stated both that Resendiz would be traveling in the near future and also that he "resides" in St. Paul. According to Resendiz, one cannot reside somewhere while traveling. Def. Mem. at 4-5; Dkt. No. 33 ("Another claim in the warrant affidavit, that Mr. Resendiz was 'currently residing' in St. Paul, MN, in fact tends to contradict the information provided by the [informant] that Mr. Resendiz had already left for Arizona.") But traveling somewhere does not necessarily indicate one's residence is changing. Nothing in the affidavit suggested Resendiz was *moving* to Arizona, so his continued residence in St. Paul does not discredit the warrant application. Similarly, Resendiz argues the introduction to the warrant application and the other details in that application are inconsistent. *Id.* at 5. Because the first sentence stated the informant knew of "an individual suspected of trafficking M30" pills and did not identify that person as Resendiz, the application was deficient to establish probable cause for Resendiz's alleged activities. *Id.* Again, while the affidavit's prose could have benefited from an editor, its overall meaning is clear: the informant suspected *Resendiz* of trafficking M30 pills across state lines, Bowman investigated Resendiz, learned of pending charges for similar conduct, and confirmed Resendiz's identity through Facebook, as far as was practicable. Gov. Ex. 1 at 4. Resendiz's other attempts to parse the application's language are similarly flawed.

## IV.   The Good Faith Exception Applies

Even if the warrant lacked probable cause to be issued, the good faith exception would apply here. Under the good faith exception to the Fourth Amendment's warrant requirement, "disputed evidence will be admitted if it was objectively reasonable for the officer executing the search warrant to have relied in good faith on the judge's

9

determination that there was probable cause to issue the warrant." *United States v. Mayweather*, 993 F.3d 1035, 1041 (8th Cir. 2021). "The operative test is whether a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization." *Id.* (internal quotation marks and citations omitted). There are four recognized limits to the good faith exception. The exception will not apply

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Proell*, 485 F.3d 427, 431 (8th Cir. 2007) (citing *United States v. Leon*, 468 U.S. 897, 921 (1984).

Resendiz argues the good faith exception does not apply in this case, in large part because the issuing judge "acted as a rubber stamp for the conclusory assertions" in the warrant application and affidavit. Def. Mem. at 11; Dkt. No. 33. He further contends that no well-trained police officer could think the warrant was valid. *Id.* at 15.[2] The Government disagrees, arguing Bowman clearly tried to corroborate the informant's information and acted incrementally, in good faith. Gov. Mem. at 5-7; Dkt. No. 34.

Resendiz's arguments fail. There is nothing in the record to suggest Judge Kyle abandoned his judicial role or "rubber stamped" this application. And while written in a somewhat conclusory-fashion, the supporting affidavit, when read as a whole, suggests

---

[2] As with his probable cause arguments, Resendiz attempts to parse the language of the affidavit. Those attempts fail when reading the affidavit as a whole, as required under the law. *See Davis*, 867 F.3d at 1027.

Bowman undertook a good-faith investigation into the informant's tip and Resendiz's conduct. In light of that background investigation, along with a neutral judge's probable cause determination, it was not *entirely unreasonable* for law enforcement to rely on the warrant, even where the underlying application was somewhat sloppy. *See Proell*, 485 F.3d at 431. None of the four limits to the good faith exception apply here.

Lastly, because the warrant application was supported by probable cause, the later searches of Resendiz's backpack, person, and cell phone were not fruit of the poisonous tree.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT:

Resendiz's Motion to Suppress [Dkt. No. 19] be **DENIED.**

Dated: March 1, 2023
        s/David T. Schultz
        DAVID T. SCHULTZ
        United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).